1
2
3
4
5
6
7
8
9
10          IN THE UNITED STATES DISTRICT COURT
11        FOR THE EASTERN DISTRICT OF CALIFORNIA
12
13
NAIEL AMMARI, et al.,                          CASE NO. CV F 11-0867 LJO DLB
14
                      Plaintiff,               **ORDER ON PLAINTIFF'S MOTION TO**
15                                             **APPLY COLLATERAL ESTOPPEL**
      vs.                                      (Doc. 25.)
16
EUGENE BRATHWAITE, et al.,
17
                      Defendants.
18
_____/
19
20                          **INTRODUCTION**
21          Plaintiffs Naiel Ammari ("Mr. Ammari") and Turlock RV Center, Inc., dba Best RV ("Best
22   RV"), seek to collaterally estop relitigation of issues pertaining to an underlying state court ruling that
23   a search warrant executed on Best RV lacked sufficient probable cause.  Defendants Eugene Brathwaite
24   ("Mr. Brathwaite") and Sylvia Thomas (Ms. Thomas") respond that Mr. Ammari and Best RV
25   (collectively "plaintiffs") fail to establish that collateral estoppel applies to plaintiffs' unlawful search
26   and seizure claims.  This Court considered on the record plaintiffs' motion to apply collateral estoppel
27   and VACATES the July 10, 2012 hearing, pursuant to Local Rule 230(g).  For the reasons discussed
28   above, this Court DENIES to apply collateral estoppel to the state court ruling on probable cause.

                                    1

# BACKGROUND

## Summary

Mr. Brathwaite is a California Department of Motor Vehicles ("DMV") investigator and submitted an affidavit for a search warrant for Best RV, plaintiffs' recreational vehicle ("RV") dealership in Turlock. After execution of the search warrant, plaintiffs successfully challenged the search warrant's lack of probable cause in a state court proceeding. Plaintiffs ask this Court to apply via collateral estoppel the underlying state court ruling to support plaintiffs' unlawful search and seizure claims in this action.

## Mr. Brathwaite's Affidavit

RV dealers, including plaintiffs, charge a pre-delivery inspection fee after receipt of a new RV to cover preparation and safety measures. In late 2009, Mr. Brathwaite investigated complaints against Best RV. Mr. Brathwaite prepared a July 8, 2010 Statement of Probable Cause ("affidavit") to request "a complete search of Best RV Centers [sic] business and computers records from February 1, 2009 through July 7, 2012, as a means to support the unlawful assessment of fees" in that:

1.   "[W]ithin the last 36 months, 25 consumer complaints had been filed against Best RV Center" through the Better Business Bureau ("BBB"), which had given Best RV BBB's lowest "F" rating;

2.   Matthew Ball ("Mr. Ball) submitted a May 3, 2009 complaint against Best RV because a Best RV employee told Mr. Ball "that the inspection fee was mandatory 'required by the State of California'";

3.   Gerry Butts ("Mr. Butts'") submitted a March 31, 2010 complaint against Best RV because Mr. Butts questioned a $750 trailer "inspection fee" when "on the next day he found the trailer's braking system was not working properly";

4.   Lisa Bratland's ("Ms. Bratland's") March 31, 2010 complaint against Best RV arose from a "CA PRE DELIVERY Fee" of $750 although Ms. Bratland was a South Dakota resident, asked for a fee waiver, but never received a clear "reason for the added fee"; and

5.   "Upon review of these 3 complaints, I recognized that Best RV Center was imposing an

2

1    unlawful fee on its customers' sales contract.  There is no California law that permits the

2    assessment of a pre-delivery inspection fee.  This type of fraud is commonly known as

3    'Price Packing' wherein dealers illegally boost the cost of a vehicle's price by several

4    hundred dollars over the advertised or listed price.  Such business practices and acts

5    support grand theft and theft by false pretenses, felonies pursuant to Section 487 and

6    532(a) of the California Penal Code."

7    Stanislaus County Superior Court Judge Timothy Salter ("Judge Salter") signed a July 8, 2010

8    search warrant for Best RV's business and computer records.  On July 13, 2010, Mr. Brathwaite and

9    other DMV agents executed the search warrant and removed Best RV customer files, business records

10    and computer hardware and software.

11    **Order Granting Return Of Seized Property**

12    On September 17, 2010, plaintiffs filed an underlying Stanislaus Superior Court action ("state

13    action") against DMV and Mr. Brathwaite to seek return of the seized property pursuant to Penal Code

14    section 1540 ("section 1540") ("If it appears . . . that there is no probable cause for believing the

15    existence of the grounds on which the warrant was issued, the magistrate must cause it [property] to be

16    restored to the person from whom it was taken.")  Judge Salter conducted a hearing on October 21, 2010

17    and November 3, 2010 to address probable cause to issue the search warrant for Best RV.  Mr.

18    Brathwaite and DMV appeared at the hearing through a Deputy District Attorney John B. Goulart ("DA

19    Goulart"), and the parties presented testimony, exhibits and argument.

20    Judge Salter issued a January 31, 2011 order ("January 31 order") that the affidavit omitted key

21    information, including:

22    1.    BBB complaints against plaintiffs were brought against a Manteca dealership which

23         plaintiffs no longer operated and/or were resolved;

24    2.    There was no evidence that Mr. Ball was a party to a sale to give rise to a complaint in

25         his name;

26    3.    The paperwork as to Mr. Butts' complaint does not reference a pre-delivery inspection

27         fee in that Mr. Butts' complaint addressed a poor inspection because he experienced later

28         brake problems; and

1    4.    Ms. Bratland's sale was rescinded and her money refunded (Mr. Brathwaite testified he

2         knew such information "after talking with Ms. Bratland").

3    Judge Salter granted plaintiffs' section 1540 motion to restore the seized property and concluded:

4         Had the Court known that all but two BBB complaints had been resolved, the
          Court would not have considered the BBB complaint information determining whether
5         there was probable cause.  Had the Court known that Mr. Ball was not a party to the sales
          agreement, the Court would not have considered Mr. Ball's complaint in determining
6         whether there was probable cause.  Had the Court known there was no evidence that Mr.
          Butts or Mr. Bratland were ever told the pre-delivery inspections fee was required by the
7         State of California, and had the Court known that Ms. Bratland had received all her
          money back, the Court would not have considered that portion of the Affidavit
8         concerning them.

9         After eliminating all of the above facts in support of the issuance of the Warrant,
          the remaining facts do not give rise to a "strong presumption" that Ammari and Best RV
10        were falsely representing the pre-delivery inspection fee as a State required fee.  Had the
          full facts been revealed to the Court, the search warrant would not have been issued.

11

12                              **Plaintiffs' Claims**

13        Plaintiffs proceed on their First Amended Complaint ("FAC") against Mr. Brathwaite and Ms.

14   Thomas (collectively "defendants") to allege a single 42 U.S.C. § 1983 ("section 1983") claim that

15   defendants "fraudulently obtained a search warrant for Plaintiffs' business based on falsified evidence

16   of probable cause" in "direct violation of the Fourth Amendment."

17                                 **DISCUSSION**

18                              **Collateral Estoppel**

19        Based on the January 31 order, plaintiffs seek to invoke collateral estoppel to preclude

20   relitigation of the affidavit's lack of probable cause.

21        Collateral estoppel or issue preclusion "is a plea available to prevailing parties. The doctrine bars

22   relitigation of determinations necessary to the ultimate outcome of a prior proceeding." *Bobby v. Bies*,

23   556 U.S. 825, 829, 129 S.Ct. 2145 (2009).  "Collateral estoppel precludes relitigation of issues argued

24   in prior proceedings." *Lucido v. Superior Court*, 51 Cal.3d 335, 341, 272 Cal.Rptr. 767, 769 (1990),

25   *cert. denied*, 500 U.S. 920, 111 S.Ct. 2021 (1990). The "party against whom estoppel is asserted has

26   litigated and lost in an earlier action." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329, 99 S.Ct.

27   645 (1979).

28        "Issue preclusion . . . forecloses litigation only of those issues of fact or law that were actually

4

1  litigated and necessarily decided by a valid and final judgment between the parties, whether on the same

2  or a different claim." *Segal v. American Tel. and Tel. Co., Inc.*, 606 F.2d 842, 845 (9th Cir. 1979). "Issue

3  preclusion bars the relitigation of issues actually adjudicated in previous litigation between the same

4  parties." *Littlejohn v. U.S.*, 321 F.3d 915, 923 (9th Cir.), *cert. denied,* 540 U.S. 985, 124 S.Ct. 486

5  (2003). "The issue must have been 'actually decided' after a 'full and fair opportunity' for litigation."

6  *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988).

7        Collateral estoppel applies to the section 1983 context in that there is "no reason to believe that

8  Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate

9  an issue already decided in state court." *Allen v. McCurry*, 449 U.S. 90, 104, 101 S.Ct. 411 (1980). A

10  "'federal court must give to a state-court judgment the same preclusive effect as would be given that

11  judgment under the law of the State in which the judgment was rendered' under the Constitution's Full

12  Faith and Credit Clause and under 28 U.S.C. § 1738." *Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9[th]

13  Cir. 2007) (quoting *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 81, 104 S.Ct. 892

14  (1984)). "A party's ability to relitigate an issue decided in a prior state court determination depends on

15  the law of the state in which the earlier litigation occurred." *Kinslow v. Ratzlaff*, 158 F.3d 1104, 1105

16  (10th Cir. 1998); *see Holcombe*, 477 F.3d at 1097 ("the court applies Nevada law concerning claim

17  preclusion to the Nevada judgment.")

18        Defendants are correct that California law governs application of collateral estoppel to the

19  January 31 order rendered by a California court.

20        ***Elements***

21        The party asserting collateral estoppel bears the burden to prove the doctrine's requirements.

22  *First N.B.S. Corp. v. Gabrielsen*, 179 Cal.App.3d 1189, 1194, 225 Cal.Rptr. 254, 256 (1989). Threshold

23  requirements to apply collateral estoppel are:

24        1.    The issue to be precluded from relitigation must be **identical** to that decided in a former

25              proceeding;

26        2.    The issue must have been **actually litigated** in the former proceeding;

27        3.    The issue must have been **necessarily decided** in the former proceeding;

28        4.    The decision in the former proceeding must be **final and on the merits**; and

1       5.      The party against whom preclusion is sought must be the **same as, or in privity with**,

2             the party to the former proceeding.

3   *Lucido*, 51 Cal.3d at 341, 272 Cal.Rptr.2d at 769.[1]

4       Plaintiffs advocate their satisfaction of the collateral estoppel elements.

5                       ***Identical Issues***

6       "The application of the doctrine of collateral estoppel depends on whether the *issue* in both

7   actions is the same, not whether the issue arises in the same *context*." *Gabrielsen*, 179 Cal.App.3d at

8   1195-1196, 225 Cal.Rptr. at 257 (italics in original). "[O]nly issues actually litigated in the initial action

9   may be precluded from the second proceeding under the collateral estoppel doctrine. . . . An issue is

10  actually litigated '[w]hen [it] is properly raised, by the pleadings or otherwise, and is submitted for

11  determination, and is determined.'" *Gottlieb v. Kest*, 141 Cal.App.4th 110, 148, 46 Cal.Rptr.3d 7 (2006)

12  (citations omitted).

13      Plaintiffs argue that the state action and this action address the identical issue as to the affidavit's

14  validity and in turn the unlawful search and seizure of RV Best.  Without expanding, defendants offer

15  that the issues in the state action and this action are not identical.

16      The state action addressed the precise issue at stake here – the validity of the affidavit and in turn

17  the search and seizure of Best RV property.  Defendants offer nothing to challenge the identity of issues

18  in the state action and this action.  Plaintiffs establish the identical issues element.

19                    ***Same Parties Or Privity***

20      To challenge application of collateral estoppel, defendants chiefly dispute similarity of parties

21  in the state action and this action.

22      In *Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 875, 151 Cal.Rptr. 285 (1978), the California

23  _____

24       [1]      Plaintiffs propose evaluation of the following similar collateral estoppel elements:

25          1.     The issue at stake is **identical** to an issue raised in the prior litigation;

26          2.     The issue was **actually litigated** in the prior litigation; and

27          3.     The determination of the issue in the prior litigation must have been a **critical and necessary** part
             of the judgment in the earlier action.

28  *Littlejohn*, 321 F.3d at 923 (bold added).

1   Supreme Court examined the due process implications of collateral estoppel:

> In the context of collateral estoppel, due process requires that the party to be estopped must have had an identity or community of interest with, an adequate representation by, the losing party in the first action as well as the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication. Thus, in deciding whether to apply collateral estoppel, the court must balance the rights of the party to be estopped against the need for applying collateral estoppel in the particular case, in order to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, or to protect against vexatious litigation.

*Clemmer*, 22 Cal.3d at 875, 151 Cal.Rptr. 285 (citations omitted); *see Lynch v. Glass*, 44 Cal.App.3d 943, 948, 119 Cal.Rptr. 139 (1975) ("collateral estoppel may be applied only if the requirements of due process are met").

Defendants argue that the same parties/privity element is missing in that defendants lacked control or a direct personal interest in the outcome of the state action. Defendants note that in the state action, Mr. Brathwaite appeared not in his individual capacity but merely as a DMV witness "in his official capacity as an investigator" and that DA Goulart appeared only for DMV, not defendants. Defendants point out that Ms. Thomas was not named in the state action and did not appear in it. Defendants contend that defendants lacked a personal interest in the outcome of the state action and were not represented by personal counsel.

Defendants equate the state action to criminal prosecution which law enforcement officers investigated and in which they testify. Defendants point to the absence of privity between an underlying criminal prosecution and a subsequent section 1983 action. *See Hardesty v. Hamburg Tp.*, 461 F.3d 646, 651 (6th Cir. 2006) ("police officer defendants in a § 1983 case are not in privity with the prosecution of a related criminal case and do not have a personal stake in the outcome of the criminal case"); *McCoy v. Hernandez*, 203 F.3d 371, 375 (5th Cir. 2000) ("a § 1983 plaintiff may not invoke the doctrine of collateral estoppel against officers following a favorable ruling in a prior criminal proceeding"); *Kinslow*, 158 F.3d at 1106 ("The mere fact that [the officers] happen[ed] to be interested in a particular question, or in proving a state of facts as may have been presented in [the prior action,] . . . does not establish that they were in privity with any of the parties in that action. . . . Because the officers were neither parties nor privies to the prior state court determination and, therefore, did not have a full and fair opportunity to litigate in state court the constitutionality of the issues in this section 1983 action, the

1   doctrine of issue preclusion does not apply to this case."); *Davis v. Eide*, 439 F.2d 1077, 1078 (9th Cir.

2   1971) ("The defendants were city police officers not directly employed by the state; they had no measure

3   of control whatsoever over the criminal proceeding and no direct individual personal interest in its

4   outcome. In these circumstances there was no privity sufficient to invoke the doctrine of collateral

5   estoppel.").

6           The state court action was not a criminal prosecution.  It was an action to seek return of property

7   held by DMV.  Nonetheless, the state court action is similar to a criminal prosecution for collateral

8   estoppel purposes and could not have arisen without a criminal prosecution.  DA Goulart represented

9   DMV's interests in the state prosecution even though Mr. Brathwaite was a named party in the state

10   action.  DA Goulart did not represent defendants' personal interests and in particular those interests at

11   issue in this section 1983 action.  Defendants had no direct personal stake in the state action.  They do

12   in this action.  At most, defendants were interested in particular issues involved in the state action which

13   fails to establish their same parties/privity status.  Defendants had no control over DA Goulart and his

14   defense of the state court action.  Plaintiffs fail to establish the same parties/privity element.

15                   ***Full And Fair Opportunity To Actually Litigate***

16           Plaintiffs contend that the validity of the affidavit and search and seizure of property was actually

17   litigated and "fully explored" in the state action given its two-day hearing with evidence and argument

18   to culminate in Judge Salter's January 31 order.  Plaintiffs note that the January 31 order's finding that

19   the "search warrant would not have been issued" with revelation of "full facts" was "critical and

20   necessary" to the determination to restore plaintiffs' seized property.  Plaintiffs point out that defendants

21   do not challenge the January 31 order's validity.

22           Defendants argue that they lacked a full and fair opportunity in the state action to litigate issues

23   at stake in this action.

24           "[E]specially where collateral estoppel is applied 'offensively' to preclude a defendant from

25   relitigating an issue the defendant previously litigated and lost, the courts consider whether the party

26   against whom the earlier decision is asserted had a 'full and fair' opportunity to litigate the issue." *Roos

27   v. Red,* 130 Cal.App.4th 870, 880, 30 Cal.Rptr.3d 446 (2005), *cert. denied*, 546 U.S. 1174, 126 S.Ct.

28   1341 (2006).  "[C]ollateral estoppel cannot apply when the party against whom the earlier decision is

asserted did not have a 'full and fair opportunity' to litigate that issue in the earlier case." *Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411 (1980). The "requirement of determining whether the party against whom an estoppel is asserted had a full and fair opportunity to litigate is a most significant safeguard." *Blonder-Tongue Laboratories, Inc. v. Univ. of Illinois*, 402 U.S. 313, 329, 91 S.Ct. 1434 (1979).

Plaintiffs seek offensive use of collateral estoppel to bar defendants to relitigate the affidavit's probable cause. Defendants argue that such offensive use is "unfair" because defendants lacked "a full and fair opportunity" to litigate plaintiffs' section 1983 claims in that the state action challenged the affidavit's sufficiency for return of the seized property. Defendants note that plaintiffs' section 1983 claims here challenge "the integrity of the warrant and make[] a *Franks*[2] claim that the warrant affidavit was fraudulent in order to obtain monetary damages" from defendants.

In the state action, defendants lacked a full and fair opportunity to litigate the section 1983 claims here seeking to impose personal liability on them. Defendants did not themselves actually litigate and lose the probable cause issue in the state court action which addressed return of plaintiffs' property only. Defendants' personal liability was not at stake in the state action. Although the affidavit was found invalid in the state action, plaintiffs fail to demonstrate that such finding is conclusive on defendants for purposes of their personal liability. As noted above, defendants lacked representation in the state action in that DA Goulart defended DMV interests. Applying collateral estoppel would negate the safeguard of a full and fair opportunity to litigate issues giving rise to defendants' potential personal liability.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court DENIES plaintiffs' motion to apply collateral estoppel that the affidavit lacked sufficient probable cause. Given denial of plaintiffs' motion, this Court need not address additional points raised by defendants, including treatment of plaintiff's papers as a

/ / /

---

[2]    "There is, of course, a presumption of validity with respect to the [search warrant] affidavit." *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674 (1978). A search warrant affidavit may be challenged by "a substantial preliminary showing that a false statement knowingly and intentionally [made], or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-156, 98 S.Ct. 2674.

1  summary judgment motion to require additional time for defendants to oppose.

2       IT IS SO ORDERED.

3  **Dated:    June 26, 2012**              ___/s/ Lawrence J. O'Neill___
                                            UNITED STATES DISTRICT JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28